United States Courts
Southern District of Texas
FILED

SEP 17 2024

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

TIMOTHY AGUILAR                                    Case No.
  *Plaintiff*

v.

ESWORTH RAWLINGS. US FUNERAL EXPENSES             **24 CV 3474**
DOE INSURANCE CO.
DOE TELEMARKETER(S) 1-100
  *Defendants*                                     JURY TRIAL DEMAND

## ORIGINAL COMPLAINT

1.  Plaintiff Timothy Aguilar ("Aguilar" or "Plaintiff") brings this action against Defendants Esworth Rawlings ("Rawlings"), US Funeral Expenses ("US Funeral"), Doe Telemarketers 1-100 ("DOE telemarketers") and DOE insurance company to secure redress for Defendants' illegal practice of causing a barrage of calls to be made to the Plaintiff's cell number that has been "*registered*" and "*active*" on the National Do Not Call Registry ("DNCR") for more than ten (10) years and has repeatedly requested not to receive telemarketing calls regarding final expense & or Medicare solicitations from telemarketers. Defendants' have used an automatic telephone dialing system ("ATDS") and prerecorded artificial voice bot, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2.  Telemarketing calls are intrusive, annoying and a clear and present threat to public safety. Millions of people within our democratic society object to these calls, which interfere with their lives, tie up their phone lines and cause confusion and disruption on their phones. Faced with growing public criticism of abusive telephone marketing practices, Congress

enacted the TCPA of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991) codified at 47 U.S.C. § 227, *et seq*, (TCPA). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance telemarketing, prerecorded messages and or telephone solicitations to their homes, *Id.* § 2(6), and sought to strike a balance between 'individuals' privacy rights, public safety interests and commercial freedoms." *Id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 649 (4th Cir. 2019). On or about June 27, 2003, the FCC created the national DNCR, a federal database established for individuals like plaintiff, to exclude themselves from telemarketing calls unless they consent to receive the calls in a *signed* and *written agreement*. The TCPA also prohibits all named Defendants from making, delivering or assisting in making telephone calls to individuals like plaintiff that features a prerecorded or artificial voice without the prior express consent of the party called. The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the DNCR. 47 C.F.R. § 64.1200(c )(2). This law is crystal clear on what it means – if a person wishes to no longer receive telephone solicitations, that person can add his number to the DNCR. *See Id.*; 16 C.F.R. § 310.04(b)(iii)(B) (It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to … initiate any outbound telephone call to a person when … that person's telephone number is on the DNCR maintained by the Commission).

3. Rawlings, US Funeral, DOE Defendants, it's agent(s), affiliates and or representatives did not obtain express written consent from Plaintiff prior to calling his personal wireless cellphone while being on the DNCR, therefore, Defendants in whole and or individually, are liable under the TCPA and its implementing regulation. 47 C.F.R. § 64.1200(a)(2).

4. The TCPA targets unauthorized phone calls exactly like the ones alleged in this case, based on Defendants in whole and or individually, use of their advanced technology equipment to spam and spoof this litigant without his express and or written consent while being on the federal and state's DNCR are liable under the TCPA.

5. By placing these calls at bar, named Defendants herein, have violated the statutory right and privacy of Plaintiff and caused him to suffer damages that are recognized by statute, i.e. invasion of privacy, seclusion, disruption into plaintiff's work week, anxiety, causing Plaintiff aggravation of these nuisance & intrusive calls

## JURISDICTION AND VENUE

6. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331, because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012). The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claims for violations of the Texas Business & Commerce Code & Texas Deceptive Trade Practices Act relate to the same illegal telemarketing campaign as the TCPA claims.

7. This Court has personal jurisdiction over named Defendants because Rawlings contracted with US Funeral and Doe telemarketing companies to place, initiate and or deliver on behalf the illegal telemarketing calls into Texas.

8. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims – namely the illegal telemarketing solicitation calls at issue – were orchestrated and or directed into this District.

# PARTIES

9. Plaintiff is a natural person residing in Pasadena, Texas, 77503. At all times herein, Plaintiff is a resident of the Southern District of Texas and was present in Texas for all incoming calls made by Rawlings and DOE defendants.

10. Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).

11. Defendant Rawlings is an individual who resides at 1225 Sharptank Ct, Apopka, Florida 32712 and maintains an alleged business office at 1707 Orlando Central Parkway S Obt – Orlando, Florida 32805. Defendant Rawlings is also a person as defined by 47 U.S.C. § 153(39). Rawlings is sued in his individual capacity.

12. DOE telemarketers 1-100 & DOE insurance company, and their subsidiaries and agents, are collectively referred to as "DOE telemarketers and or DOE insurance company" The true names and capacities of the Defendants sued herein as DOE Defendants 1 through 100 and DOE Insurance company, inclusive, are currently unknown to Plaintiff, who therefore sues such Doe Defendant(s) by fictious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful TCPA violations alleged herein. Plaintiff will seek leave of Court to amend this Complaint to reflect the true business and or corporate names and capacities of the DOE Defendants when such identities become known.

## A. THE TELEPHONE CONSUMER PROTECTION ACT – 47 U.S.C. § 227 *et seq.* RESTRICTIONS ON CALLS USING ARTIFICIAL OR PRERECORDED VOICES INCLUDING TEXT MESSAGES

13. The National DNCR allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200( c)(2).

14. A listing on the DNCR "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

15. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the DNCR and provides a private right of action against any entity or individual that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227( c)(5); 47 C.F.R. § 64.1200(c )(2).

16. Federal regulations implementing the TCPA provide that "[t]he rules set forth in paragraph (c) and (d) of this section are applicable to any person (*Rawlings*) or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'" 47 C.F.R. § 64.1200(e).

17. The FCC's regulations implementing the TCPA also require persons or other entities that make telemarketing calls to maintain company-specific do-not-call lists and to honor do-not-call requests. 47 C.F.R. § 64.1200(d). Company-specific do-not-call requests must be honored for five years from the time the request is made. 47 C.F.R. § 64.1200(d)(6). Sellers must coordinate the do-not-call requests received by their telemarketers, so that all telemarketing calls on behalf of the seller cease if a consumer makes a do-not-call request to one of the seller's telemarketers immediately.

18. The plain language of sections 227(b)(1)(A)(iii) and 227(b)(1)(B) prohibit using an artificial or prerecorded voice to make any call to a wireless or residential telephone number without the prior express written consent of the called party unless the call is made

solely to collect debt owed or guaranteed by the United States or is initiated for emergency purposes.

19. The FCC requires *"prior express written consent"* for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular: [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. [1]

20. The FCC has defined prior express written consent in 47 C.F.R. § 64.1200(f)(9) as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

21. Under the TCPA standard, the burden is on the Defendant named herein to demonstrate that Plaintiff gave his prior express consent to receive a call featuring prerecorded message and artificial voices to his cellular or residential telephones, including any text messages.

---

[1] *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd 1830, 1844 (2012).

22. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.* 569 F.3d 946, 951 (9th Cir. 2009).

23. A corporate officer involved in the telemarketing at issue and or within the litigation may be personally liable under the TCPA. E.g., *Jackson Five  Star Catering Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. Lexis 159985 @ *10 (E.D. Mich. Nov 8, 2013). Many courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Maryland v. Universal Elections*, 787 F.Supp. 2d 408, 415-16, (D.Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force").

**B.  Defendants practice Spoofing in their daily telemarketing business activities**

24. The practice of "spoofing" is used deceptively by scammers, including Rawling's agents and or affiliates to manipulate the caller ID system, so it appears that their calls are from legitimate phone numbers [2] as the facts demonstrate herein.

25. Rawlings and or agents and or affiliate(s) have used DIDs for "neighbor" spoofing and/or "snowshoe" spoofing. Neighbor spoofing is the practice of using caller ID numbers with the same area code and same or similar three-digit exchange as the call recipient to increase the odds of the call recipient answering the call due to the belief that the call is originating from the local area. Snowshoe spoofing is the practice of using massive quantities of unique

---

[2] Caller ID "spoofing" occurs "when a caller deliberately falsifies the information transmitted to [a cell-phone owner's] caller ID display to disguise their identity." FCC, Caller ID Spoofing, https://www.fcc.gov/spoofing. The Federal Communications Commission has noted that "scammers often use neighbor spoofing so it appears that an incoming call is coming from a local number, or spoof a number from a company or a government agency that you may already know and trust." Id.; see, e.g., *Zelma v. Choice Energy, LLC*, Case No. 19-17535, 2020 WL 5201341, at *1 (D.N.J. Sept. 1, 2020)...

numbers for caller ID on a short-term or rotating basis to evade behavioral analytics detection, or to bypass or hinder call blocking or call labeling analytics based on the origination numbers.

26. Numbers used for snowshoeing are often numbers that cannot receive incoming calls. Rawlings, Doe Telemarketers & DOE insurance company  herein have actively participated in the initiation of, assisted and or facilitated in the initiation of, and delivery of illegal robocalls to plaintiff's DNCR phone number.

27. Illegal robo callers frequently use caller ID spoofing to impersonate trusted organizations such as law enforcement, government agencies, and large corporations.

28. Patterns of neighbor spoofing or impersonating trusted numbers are easy to detect when present in caller detail records ("CDR's") and indicate that the upstream provider is sending illegal calls across the downstream provider's network.

29. Given how prolific caller ID spoofing and unsolicited calls are, it's difficult for plaintiff to tell which incoming phone calls are "regular," legitimate calls, which calls are unsolicited telemarketing and which are outright fraud.  Upon information and belief, plaintiff received other illegal calls from or on behalf of named Defendants herein and were subsequently abandoned.

30. As Rawlings is aware of, it is the practice of the telemarketers and or lead generators who telemarket to try and sell Rawlings and DOE insurance company goods and final expenses services to spoof caller ID's, and to change caller ID's in disparate calls to this plaintiff, so that the recipient of their calls cannot tell who is calling him before answering.

31. DOE telemarketers and or DOE Insurance company exercise a common practice in spoofing Caler ID's to call Plaintiff, to make it appear that such calls are being made locally and not abroad.

**C. Defendant's used a ATDS to place illegal calls to Plaintiff in violation of the TCPA.**

32. Rawling's and/or his agent(s) and DOE telemarketer's unlawful soliciting calls to Plaintiff began with a noticeable pause or delay prior to a live representative/agent/fraudster/telemarketer, affiliate or agent appearing on the line.

33. Upon information and belief, Rawlings and or his agent(s) & DOE telemarketer(s) 1-100 maintain a stored list of 10 or 11 digit telephone numbers of consumers (including plaintiff's) in its database for illegal telemarketing solicitation purposes

34. Upon information and belief, each named Defendant herein has the capacity, capability and or technology to utilize a "predictive dialing system" which interfaces with software and databases which have the capacity to generate numbers randomly or sequentially.

35. The dialing system technology used by Rawlings and or his agent(s) and or DOE telemarketer(s) to call phone numbers are stored in those databases.

36. Furthermore, Defendant's dialing system utilizes computer code and/or algorithms to determine the orders/sequences of calls to be automatically dialed

37. The operation of the random/sequential number generator, referred to above results in Defendant's dialing system automatically placing calls to the 10 or 11-digit telephone numbers in Defendant's stored list(s).

38. Plaintiff asserts that Rawling's and or his agent(s) and or DOE telemarketers called him with an ATDS and without the benefit of discovery, cannot accurately name the hardware and or software type or brand.

**39.** Plaintiff believes this because Defendant's or agent(s) calls to Plaintiff began with a noticeable pause or delay prior to a live representative of Defendant coming on the line and as replayed and listened to on the phone recordings that plaintiff made of these illegal calls.

**40.** While Plaintiff has not had the opportunity or benefit of full discovery as allowed by the Rules, he intends to prove Defendants herein utilized an ATDS in the course of discovery [3] as the calls being made to Plaintiff DNCR cell phone number & phone-call recordings.

## FACTUAL ALLEGATIONS

**41.** The plaintiff is an individual. Rawlings as a insurance agent, is heavily engaged in selling individual health insurance plans and supplementary final expense plans. Part of Rawlings marketing strategies is to allow the use of a ATDS by DOE Telemarketing companies in an attempt to establish a business relationship with consumers across the United States while using fictitious business entities and who are on the DNCR. Therefore, all named Defendants are subject to the restrictions under 47 U.S.C. § 227 (b) of the TCPA.

**42.** The TCPA prohibits the use of an ATDS for direct phone calls and other communication to individuals that are on the national and state DNCR without prior express written consent of the called party. The TCPA contains a private right of action for violations of this statute.

**43.** Plaintiff has verbally told a multitude of final expense telemarketers to stop calling, (1) advised telemarketers that plaintiff is on the national and state do not call registries; (2) to

---

[3] *See Atkinson v. Pro Custom Solar LCC*, No. SA-21-CV-178-OLG, 2021 U.S. Dist. LEXIS 112396 (W.D. Tex. June 16, 2021), where the Honorable Judge Orlando Garcia ruled on a 12(b)(6) motion by this same defendant:

As a practical matter, no plaintiff will have personal knowledge of the defendant's telephone system at the pleadings stage. Only the defendant has that knowledge. However, Plaintiff has pled enough facts to proceed with discovery, at which time she will have the opportunity to discover the precise technology that was used at the time of the alleged violation(s). If the technology does not meet the definition set forth in the statute, as construed by the Supreme Court in *Facebook, Inc. v. Duguid*, then Defendant may move for summary judgment on that basis. Atkinson at *3

place plaintiff on a internal do not call list, and (3) a few telemarketers have stated to plaintiff "that you are black listed." (*Recorded conversations*)

44. On or about February 5, 2024 @ 2:30 PM[4], Plaintiff received an incoming pre-recorded call from caller ID # 832-681-4222 from artificial voice avatar Emily Wilson with US Funeral Expenses that was generated by Rawling's, DOE telemarketer's and or US Funeral's ATDS.[5] These pre-recorded phone calls were related with content to final expense plans brokered by Defendant Rawlings. Plaintiff was subsequently transferred to Tony Brown with U.S. Benefits before the squelch sound terminated the call. Since about September 2012, Plaintiff's number has been registered with the DNCR. *See Exhibit 1.* Plaintiff registered his phone number on the State of Texas do not call List in August 2023. *See Exhibit 2.* Plaintiff has never given any of the Defendants mentioned herein "express written consent" to make these pr-recorded and or artificial solicitation calls and texts and never provided his number to any of the Defendants named herein.

45. There are dozens of incoming robocalls directed to plaintiff's phone number that have been abandoned upon plaintiff's answering his phone and shortly thereafter, the Danielle Green, Hazel Moss and other final expense calls ring into plaintiff's DNCR cellphone number.

46. Upon information and belief, the following is a summary of the incoming calls placed, initiated, and made on behalf of Rawlings and or DOE Telemarketers 1-100 (*known at this time without discovery and or subpoenas being issued*) to the plaintiff's phone number:

   a. On or about February 7, 2024, @ 11:22 AM, Plaintiff received an incoming ringless pre-recorded call from caller ID # 806-318-0127 from artificial voice avatar Daniele Green with US Funeral Expenses soliciting final expense insurance.

---

[4] Time of incoming call by telemarketer is central standard time for all intents and purposes.

[5] An ATDS is a piece of robocall technology that has the capacity to store or produce telephone numbers to be called, even to individuals on the national and state Do Not Call Lists, without human intervention. ATDS technology can also be used to send pre-recorded or artificial voice messages as such facts are presently before this Court.

b. On or about February 9, 2024, @ 10:59 AM, Plaintiff received an incoming pre-recorded message call from caller ID # 254-537-1830 that contained artificial interactive voice avatar Hazel Moss with US Funeral Expenses soliciting final expense insurance. *See Exhibit 3* [6] ("RC")

c. On or about February 9, 2024, @ 11:51 AM, Plaintiff received an incoming pre-recorded message call ("RC") from caller ID # 972-829-7819 that contained artificial voice bot Hazel Moss with US Funeral Expenses soliciting final expense insurance. *Exhibit 4*

d. On or about February 9, 2024 @ 2:08 PM, Plaintiff received an incoming pre-recorded call from caller ID # 832-321-3362 that contained the name of Bethany from American Benefits soliciting final expense insurance and subsequently transferred to a "specialist" ("RC") named Harry Anderson. *See Exhibit 5*

e. On or about February 12, 2024, @ 10:44 AM, Plaintiff received an incoming pre-recorded message call from caller ID # 830-213-4626 that contained artificial interactive voice bot Hazel Moss with US Funeral Expenses soliciting final expense insurance. ("RC")

f. On or about February 13, 2024, @ 1:49 PM, Plaintiff received an incoming pre-recorded message call from caller ID # 817-904-1616 that contained artificial voice bot Hazel Moss with US Funeral Expenses soliciting final expense insurance. ("RC"),

g. On or about February 15, 2024, @ 3:32 PM, Plaintiff received an incoming pre-recorded message call from caller ID # 972-388-5379 that contained artificial voice bot Hazel Moss with US Funeral Expenses soliciting final expense insurance. ("RC")

h. On or about February 19, 2024, @ 1:58 PM, Plaintiff received an incoming pre-recorded message call from caller ID # 401-433-3517 that contained artificial interactive voice bot Danielle Green with US Funeral Expenses soliciting final expense insurance. ("RC")

i. On or about February 27, 2024, @ 4:28 PM, Plaintiff received an incoming pre-recorded message call from caller ID # 512-532-6105 that contained artificial voice bot Danille Green with US Funeral Expenses soliciting final expense insurance. *Exhibit 6*

j. On or about March 6, 2024, @ 9:18 AM, Plaintiff received an incoming call from pre-recorded message caller ID # 430-202-5670 from artificial voice Hazel Moss with US Funeral Expenses soliciting final expense insurance. ("RC")

---

[6] "RC" means recorded conversation of the incoming call to plaintiff's phone number.

k. On or about March 12, 2024, @ 12:34 PM, Plaintiff received an incoming call from pre-recorded message caller ID # 430-975-9363 from artificial voice bot Danille Green with US Funeral Expenses soliciting final expense insurance. ("RC")

l. On or about April 29, 2024, @ 12:40 PM, Plaintiff received an incoming pre-recorded message call from caller ID # 817-945-8727 from artificial voice bot Danielle Green with US Funeral Expenses. ("RC")

m. On or about April 29, 2024, @ 12:53 PM, Plaintiff received an incoming pre-recorded call from caller ID # 346-394-8179 from artificial voice Danielle Green with US Funeral Expenses soliciting final expense insurance who attempted to transfer the call to a live agent but squelch tone prevented the call from being transferred. *Exhibit 7*

n. On or about April 29, 2024, @ 3:08 PM, Plaintiff received an incoming pre-recorded message call from caller ID # 830-301-3710 from artificial voice Hazel Moss with US Funeral Expenses soliciting final expense insurance. ("RC")

o. On or about April 30, 2024, @ 3:22 PM, Plaintiff received an incoming pre-recorded message call from caller ID # 430-314-1246 from artificial interactive voice Danille Green with US Funeral Expenses soliciting final expense insurance. ("RC")

p. On or about May 1, 2024, @ 1:42 PM, Plaintiff received an incoming pre-recorded message call from caller ID # 726-336-9210 from artificial voice bot named Danille Green with US Funeral Expenses soliciting final expense insurance. ("RC")

q. On or about May 2, 2024, @ 10:44 AM, Plaintiff received an incoming pre-recorded message call from caller ID # 254-345-5029 from artificial voice Danille Green with US Funeral Expenses soliciting final expense insurance. ("RC")

r. On or about May 2, 2024, @ 3:46 PM, Plaintiff received an incoming pre-recorded message call from caller ID # 940-539-6507 from artificial voice bot Danelle Green with US Funeral Expenses soliciting final expense insurance. ("RC")

s. On or about May 10, 2024, @ 1:31 PM, Plaintiff received an incoming pre-recorded message call from caller ID # 940-424-3164 from artificial voice bot Vanessa Hill with US Funeral Expenses soliciting final expense insurance and such artificial voice bot sounds "very" similar like the other voice bot named Hazel Moss. ("RC")

t. On or about May 23, 2024, Plaintiff received a call from live human Sam with Festive Health while talking to this robocaller, plaintiff received another robocall from live human Alex from 832-264-2272 at 11:28 AM soliciting final expense insurance. Alex asked qualifying questions about plaintiff's medical history. Alex then transferred, paired and or merged the call to live human Jordan with US Funeral Expenses as so identified by Jordan. After Jordan completed further identifying medical questions was plaintiff then transferred to US Funeral Expenses licensed advisor/agent Esworth Rawlings. ("RC")

u.  On May 23, 2024, ("RC") Jordan called from caller ID # 800-775-6000 at 1:29 PM to Plaintiff's phone number and wanted to connect plaintiff with his "licensed agent" being "Esworth Rawlings" and provided Rawlings direct phone number 863-280-4522.

v.  On or about May 28, 2024, Jordan called Plaintiff's cell number from 800-775-6000 at 10:54 AM and inquired about plaintiff speaking with Rawlings – Plaintiff also inquired about the website www.usfuneralexpenses.net that was previously provided by Jordan. ("RC")

w.  On or about May 29, 2024, Rawlings called ("RC") plaintiff regarding the final expense application. Rawlings made admissions as to having 10-15 lead generators in the past year. Rawlings has knowledge of the identity of the lead source that contacted plaintiff.

x.  On or about May 30, 2024, Rawlings (*as listed in above picture*) called plaintiff's phone number from caller ID # 863-280-4522 regarding finalizing and or completing the final expense application. ("RC")

y.  On or about June 3, 2024, @ 11:42 AM, Plaintiff received an incoming call from caller ID # 832-678-1173 from Jason with US Funeral Expenses soliciting final expense insurance. ("RC")

z.  On or about June 4, 2024, @ 5:31 PM, Plaintiff received an incoming call from caller ID # 580-752-9771 from Lex soliciting final expense insurance and who identifies the calling entity as US Life but later in the recorded conversation admits he is with US Funeral Expenses. ("RC")

aa. On or about June 10, 2024, @ 10:22 AM, Plaintiff received an incoming call from caller ID # 580-563-8350 soliciting final expense insurance from live agent Sam with US Funeral Expenses who admits calling plaintiff weekly. ("RC")

bb. On or about July 3, 2024, Plaintiff received an incoming call from caller ID # 661-231-1068 at 3:41 PM from live human Sam Thompson soliciting final expense insurance with US Funeral Expenses as he admits and wanted to connect plaintiff with "licensed agent" Jordan. ("RC")

cc. On or about  July 3, 2024 @ 4:20 PM, Plaintiff received a missed (*abandoned*) call to his cell phone number from caller ID # 631-613-3625.

dd. On or about July 3, 2024 @ 4:21 PM, Plaintiff received an incoming phone call from caller ID # 631-613-3625 soliciting final expense insurance and live agent Sam Thompson was the agent calling in and subsequently transferred to "licensed agent" named Adam Wilson who also stated he was a state licensed agent. ("RC")

ee. On or about July 3, 2024 @ 6:07 PM, Plaintiff received an incoming phone call from caller ID # 631-613-3625 and Sam Thompson was the live agent calling in and

subsequently transferred to "licensed agent" named Adam Wilson who also stated he was a state licensed agent. ("RC")

ff. On or about July 16, 2024, Jordan with US Funeral Expenses called from caller ID # 772-244-8075 @ 5:50 PM and inquired about the previous application. ("RC")

gg. On or about August 27, 2024, Plaintiff received an incoming pre-recorded message call from caller ID # 830-557-5355 at 3:57 PM from Miley from Final Care soliciting final expense insurance. After going thru the qualifying questions, the bot forwarded the phone call to her alleged supervisor. Plaintiff was astonished by who answered ... being Jordan with US Funeral Expenses and Jordan recognized plaintiff's name right away as indicative on the recording plaintiff made of this call. ("RC")

hh. On or about August 28, 2024 @ 7:31 PM, Plaintiff received an incoming pre-recorded message call from artificial voice avatar Miley at caller ID # 832-251-7379 that stated the name of entity as Final Care soliciting final expense insurance. ("RC")

ii. On or about August 29, 2024 at 1:58 PM, Plaintiff received an incoming pre-recorded message call from artificial voice bot Miley with Final Care from caller ID # 832-286-1942 soliciting final expense insurance. ("RC")

jj. On or about August 29, 2024 @ 3:15 PM, Plaintiff received an incoming ringless call from Elsa with from caller ID # 518-919-4292, soliciting final expense insurance who admitted being part of US Funeral Expenses who subsequently transferred and or merged and or paired the call with Alex. ("RC")

47. In order to ascertain the source of the unsolicited calls, Plaintiff "played along" with the telemarketer and expressed interest.[7]  This was how Plaintiff discovered the source of the estimated *hundreds* of calls that have been made on behalf and or initiated under the direction of Rawlings and his minions, DOE telemarketers.

48. Rawlings, in a recorded conversation with plaintiff, asserts that he is a licensed insurance agent in forty-six (46) states. Plaintiff did a search and discovered that Rawlings is a licensed insurance agent in Texas.

---

[7] "The fact that Plaintiff "plays along" with telemarketing scripts to find out who [they] really are is not deceptive. A plaintiff must know the name of the telemarketer that violated the TCPA in order to bring suit against it, and the content of the message can help prove that it was a solicitation. *Shelton v. Nat'l Gas & Elec. LLC*. No. 17-4063, 2019 U.D. Dist. LEXIS 59235 @ *12 (E.D. Pa. Apr. 5, 2019).

49. Upon information and belief, Rawlings hires and authorizes third (3rd) party telemarketers to make, facilitate and or deliver illegal robocalls soliciting "final expense insurance products" on his behalf and/or whatever DOE insurance entity Rawlings is contracted with to violate the TCPA.

50. Upon information and belief, Rawlings approves the contracts with the telemarketers.

51. Upon information and belief, Rawlings authorizes the payments to the telemarketers.

52. Upon information and belief, Rawlings  pays the telemarketers from the corporate and or personal bank accounts he own's and controls.

53. Upon information and belief, Rawlings has a degree of control over the telemarketers who solicit and promote his final expense products on his behalf.  Rawlings has the authority to stop the illegal phone calls that violate the TCPA, but for the *substantial profits* he reap's monthly, he utterly refuses to stop the onslaught of illegal final expense & medicare robo calls regardless if plaintiff is on the state and national DNCR.

54. Plaintiff has explicitly told Rawlings's agent's, DOE telemarketers, representatives, sub-agents to "stop-calling," his cellphone number on various instances. ("RC")

55. Upon information and belief, the calls relevant to this complaint herein, were received and delivered to plaintiff's cellphone from Doe telemarketers calling on behalf and or being directed by Rawlings and a majority of the calls were prerecorded and or with a artificial voice avatars Daniele Green, Hazel Moss and or Miley telephone script.

56. Upon information and belief,  DOE telemarketers & DOE insurance company control and direct the content for the prerecorded "telephone scripts" in order to hide their true identity and dodge and or evade TCPA liability for violating the TCPA on a daily basis.

57. At all times relevant to this Complaint herein, acting alone or in concert with others, Rawlings formulated, directed, controlled, had the authority to control, or participated in the acts and practices including the violative acts or practices set forth herein

58. Rawlings, controls the day-to-day operations and directs his employees, lead generators, salespersons and solicitors to make TCPA violating phone calls and solicit his final expense insurance products as admitted by Rawlings to plaintiff on May 30, 2024. ("RC")

59. Rawlings approved the telemarketing telephone scripts, signed the contracts, paid the commissions for the illegal behavior, approved the violation of federal law (*unbecoming of a licensed insurance agent*), and, directed the illegal calls to be made for his financial gain and/or benefit.

60. Plaintiff has never been a client of Rawlings, DOE telemarketers and or DOE insurance company or any of its other owned entities or affiliates that would constitute any business relationship.

61. Plaintiff never gave Rawlings or DOE telemarketing defendants 1-100 his prior express written consent to receive the calls from any of its agent(s) and or representatives and to the best of his knowledge and or any other entities associated with Rawlings.

62. Rawlings and or its agent(s) and or affiliates purposefully availed themselves of the forum state (Texas) by specifically targeting Plaintiff by using Texas area codes to deceive and or trick this plaintiff into thinking their robocalls are local. 832 & 346 are local area codes. Area codes 817, 254, 512, 972 and 830 are within the State of Texas calling prefixes.

63. Rawlings & DOE telemarketers employ outrageous, aggressive and illegal sales techniques that violate multiple federal laws and State of Texas consumer statutes

64. The illegal incoming calls that Plaintiff received from and or on behalf of Defendant Rawlings were placed while knowingly ignoring the national & state do-not-call-registries. The calls were placed without training their agents, representatives and or employees on the use of an internal do-not-call policy and the DNCR.

65. On information and belief, Rawlings does not train its agents, representatives and or employees who are engaged in telemarketing on the existence and use of any state or federal do not call lists.

66. Rawlings and or it's agent(s) participated in, facilitated, directed, authorized, knew of and or willfully ignored the misleading sales practices and unlawful telemarketing taking place, while knowing concrete facts that required a reasonable person to investigate further, but for such violations of state and federal TCPA laws, approved and ratified the conduct of their employees, agents and employees to engage in the false and misleading sales practices and unlawful telemarketing. Moreover, upon information and belief, Rawlings and or DOE telemarketers have falsely and deceptively stated the names of "US Funeral Expenses, Final Care, US Benefits, American Benefits, " or similar sounding entity names as the name of the company and/or entity calling plaintiff's phone number, but such statement are forged in deception to trick plaintiff into believing that is the name of the business calling.

67. Moreover, the website generated for US Funeral https://usfuneralexpenses.net/ is deceptive and fraudulent in all things. This website was given to plaintiff by US Funeral agent Jordan so plaintiff could feel assured that the final expense solication call was legitimate, but in reality its not. See Exhibits 8 – 8.3. ("RC")

68. Rawlings refusal to take any action to stop or curtail the unlawful sales practices and illegal telemarketing that is practiced daily is based on these illegal practices that benefit Rawlings financially in corporate profit and or financial gain.

69. DOE telemarketing companies and or DOE insurance company business model is to generate insurance leads derived through autodialed and or prerecorded calls to consumers cellular telephone numbers regardless of consent, as evident in the facts herein before thew Court, and transfer calls to DOE insurance company agent, being Rawlings once the verification process has been completed and or satisfied as to the qualifying questions.

70. None of the forementioned Defendants are registered as telephone solicitors with the Texas Secretary of State.

71. Defendant's calls were not made for "emergency purposes."

72. Upon information and belief, none of the Defendant's named herein do not have a written policy for maintaining an internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(1).

73. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

74. For more than twenty tears, the FCC has explained that's its "rules generally establish that the party on whose behalf a solicitation is made bears the ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act,* 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

75. The FCC has instructed that sellers such as Rawlings may not avoid liability by outsourcing telemarketing to third parties, such as DOE telemarking companies:

76. [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC,* 28 FCC Rcd. 6574, 6588 ¶ 37 (2013).

77. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

78. Rawlings is liable for telemarketing calls placed by DOE telemarketing companies on his behalf and direction while having ten (10) to fifteen (15) lead generators that he contracts with. ("RC") Rawlings generates final expense and medicare insurance plans for a specific insurance company not named yet but should be discovered during pre-trial discovery.

79. Rawlings was directly involved in hiring lead generator(s) and or telemarketing company that could make non-consent TCPA violation phone calls to potential customers, vet potential clients, and only sell him the qualifying ones.

80. Rawlings controls the day-to-day activities of his agent(s) and DOE telemarketing companies by providing the specific criteria for the leads it would accept and requires its vendors, including DOE telemarketing companies, to adhere to those mandated criteria.

81. For example, the calls Plaintiff received demonstrate that Rawlings required DOE telemarketing companies to contact the customer to confirm with vetting medical and or health questions before the transfer and or merging of the call as a requirement that DOE telemarketing companies receive its commission. These TCPA violations that Plaintiff was subjected to, transpired despite Rawling's agent(s) knowing that it was to have no contact with Plaintiff, who had made a request numerous times to stop calling since January of 2023 and moreover, plaintiff's number was on the federal & state's DNCR.

82. Rawlings would not compensate DOE telemarketing companies and or agent(s) for a final expense and or medicare call made unless the lead(s) purchased met the criteria established by a set criteria.

83. As such Rawlings controlled the content of DOE telemarketing.

84. It also could and should have communicated Plaintiff's multiple requests not to be called to it's agent and or affiliates.

85. By virtue of identifying the leads that they would accept, Rawlings directed the content of the communication that DOE telemarketing companies would use in their calling

86. A reasonable seller whose telemarketers are making calls would investigate into the reasons why they would be calling numbers on the DNCR, and, moreover, an individual who had made requests to stop calling.

87. Rawlings and or its affiliates and or agents could have investigated if the transfer and or merging of calls it was receiving were on the DNCR, but it failed to do so. They have the technology at their disposal.

88. Rawlings hired DOE telemarketing companies without a proper investigation or vetting.

89. As such, Rawlings knowingly ratified DOE telemarketing companies conduct.

90. Rawlings also ratified agent(s) and or DOE telemarketing companies illegal TCPA conduct because, with knowledge of Plaintiff's phone number being on the DNCR and pre-recorded and artificial voice and or messages being used to call plaintiff as demonstrated on recordings.

91. Rawlings accepted the Plaintiff's illegal lead and then utilized it for a benefit by continuing to promote its final expense insurance plans to him for a particular and specific DOE insurance company.

92. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships ... through discovery, if they are not independently privy to such information." *In re Dish Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller to the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

93. Plaintiff's privacy has been violated by the above-described telemarketing calls

94. Plaintiff, has been harmed by the acts of Defendants because his privacy has been violated, being annoyed and harassed. In addition, the calls (*especially the back to back to calls in a single day*) occupied his telephone line, rendering his iphone unavailable for legitimate communication, including while driving, working, and performing other critical tasks. Such illegals calls are another example of the clear and present danger to public safety.

**VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 305.053**

95. Realizing the egregious and particular harm to Texas residents that unsolicited telemarketing calls to citizens of this great State of Texas, the Texas Legislature passed § 302.101 of the Texas Business & Commerce Code, which requires all "sellers" or "salespersons" making

"telephone solicitations" inducing a person to "purchase, rent, claim, or receive an item," which includes "a service" to register as such with the Texas Secretary of State. TEX. BUS. & COM. CODE §§ 302.001; 302.101

96. The burden of proof lies on a defendant to show it registered each business location to prove its licensure or on proving an exemption. *Id.* § 302.051

97. Final Expense & medicare insurance products are "items" and or "services" for which there is no exemption to the Code. § 302.051

98. None of the named Defendants listed herein are registered with the Texas Secretary of State as required and mandated by the Business & Commerce Code and as expected. *Telephone Solicitors Search*, TEXAS SECRETARY OF STATE, https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp (querying Defendant Rawlings, Sam Thompson and US Funeral Expenses which returned no results.).

99. The use or employment by any person of a false, misleading or deceptive act or practice causes economic damages or damages for mental anguish. Tex. Bus. & Com. Code § 17.50.

100. Federal common law principles of agency apply to sellers who hire telemarketers to make solicitations on behalf of the seller. *Guadian v. Progressive Debt Relief, LLC*, No. EP-23-cv-235, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023); *see also Callier v. Tip Top Cap. Inc.,* No. EP 23-cv-437, 2024 WL 1637535 at *3 (W.D. Tex. Apr 16, 2024); *Forteza v. Pelican Inv. Holdings Grp. LLC,* No. 23-cv-401, 2023 WL 9199001 at *6 (E.D. Tex. Dec. 27, 2023); *Salaiz v. Beyond Fin. LLC*, No. EP.23-cv-6, 2023 WL 6053742, at *5 (W.D. Tex. Sept. 18, 2023)( Court refusing to dismiss a § 302.101 claim because "Plaintiff has plausibly alleged that Defendant effected or attempted to effect the thirteen (13) calls Plaintiff received by hiring telemarketers to make those calls.").

101. Under the provisions of Tex. Bus. & Comm. Code § 302.302, plaintiff is allowed to seek damages of up to $5000.00 dollar per violation of § 302.101.

## VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

102. False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code. Texas Business and Commerce Code, Title 2, Chapter 17, Sec. 17.46.

103 Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes but is not limited to, the following acts: (2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services and (3) causing confusion or misunderstanding as to the affiliation, connection, or association with, or certification by, another." Texas Business and Commerce Code, Title 2, Chapter 17, Sec. 17.46(2), (3).

104. Upon information and belief, Rawlings is appointed and or employed by a DOE insurance company, who continues to commit deceptive trade practices daily with Rawlings assistance and in collusion with, when they instructed Doe telemarketing companies, affiliates, agent(s), US Funeral representative not to identify who DOE insurance company and or agents are calling on behalf of and to use spoofed caller ID numbers which caused plaintiff to become confused as to the source of the true source of the incoming phone calls and to gravely misunderstand who was soliciting plaintiff.

105. Insurance Companies are liable for Deceptive Trade Practices Acts committed by their agents under Texas Law. *In Royal Globe Insurance Company v Bar Consultants, Inc.* 577 S.W.2d 688 (1979); see also *Standard Distributors v. F.T.C.*, 211 F.2d 7 (2nd Cir. 1954);

*Goodman v. F.T.C.*, 244 F.2d 584, 591-3 (9th Cir. 1957). See *Maxwell, Public and Private Rights and Remedies Under the Deceptive Trade Practices Consumer Protection Act*, 8 St. Mary's L.J. 617, 638-39 (1977).

106. Prevailing Texas law is clear that insurance companies are liable for deceptive trade practices committed by their appointed agent in the commission of their duties. *Id.*

107. Rawlings as a licensed insurance agent, US Funeral and Doe Insurance Company used and or employed act(s) and or practice(s) in violation of the Texas Insurance Code, §541.002(2). Specifically by interjecting and or misrepresenting false names of entities during the illegal call to plaintiff and knowing very well that such names of businesses being spoken were false and or deceptive. *See also TEX. INS. CODE §§541.002(2), 541.052; TEX. BUS. & COM. CODE §17.50(a)(1)(B).*

## INJURY, HARM, DAMAGES AND ACTUAL DAMAGES AS A RESULT OF THE ILLEGAL CALLS

108. Defendant Rawlings, his agent(s) and or DOE telemarketing companies illegal phone calls harmed Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

109. Defendant's and or their agent(s) TCPA violation call harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cell phone.

110. Defendant's and or their agent(s) violation TCPA call harmed plaintiff by intruding upon Plaintiff's seclusion. Plaintiff has been harmed, injured and damaged by the calls including, but not limited to: reduced device storage, harassment, reduced data plan storage, anger, frustration, invasion of privacy, and more frequent charging of his cellphone and during plaintiff's work week, receiving back to back final expense phone calls during his work hours.

## COUNT I
### Telephone Consumer Protection Act
### Federal Do-Not-Call-Rules
### Violations of 47 U.S.C. § 227( c)(5) & 47 C.F.R. § 64.1200( c)

111. Plaintiff incorporates the forgoing paragraphs 1-110 as though the same were set forth at length herein.

112. The foregoing acts and omissions of named Defendants and/or their affiliates, agents, DOE telemarketing companies, and/or persons or entities acting on behalf of Defendants constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff's phone number despite being on the National Do Not Call Registry.

113. Defendant's violations were negligent, willful and/or knowing.

114. As a result of Defendant's, and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA 47 U.S.C. § 227, Plaintiff is entitled to an award of between $500.00 and $1500.00 in damages for each call made

115. Plaintiff is also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to plaintiff's phone number registered on the National and State Do Not Call Registries, except for emergency purposes, in the future.

## COUNT II
### (Knowing and/or Willful Violation of the TCPA "Artificial & Prerecorded Voice Message" Prohibition, 47 U.S.C. § 227 (b) *et seq.*)
### Without Prior Express Written Consent

**116.** Plaintiff incorporates the forgoing paragraphs 1-110 as though the same were set forth at length herein.

**117.** The foregoing acts and omissions of Defendants' and/or their agents, affiliates and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of 47 U.S.C.§ 227(b)(1)(A)(iii) by calling Plaintiff's phone number that is on the DNCR using a "prerecorded voice message" as defined by the TCPA on at least thirty-five (35) occasions (known at this time without the benefit of discovery) or more.

**118.** Plaintiff was statutorily damaged on more than thirty-five (35) instances or more under 47 U.S.C. § 227(b)(3)(B) by the Defendants and or it's agents illegal telephone calls described above.

**119.** As a result of Rawling's, his agent(s), DOE telemarketing companies and or DOE insurance company, knowing and/or willful violations of 47 U.S.C. §227(b)(1)(A), Plaintiff seeks treble damages as provided by statute, up to $1,500.00 for each and every violation pursuant to 47 U.S.C. § 227(b)(3).

**120.** Plaintiff is also entitled to and does seek an injunction prohibiting named Defendants and their affiliates, agent(s), lead generators from violating 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to plaintiff's cell phone using an artificial or pre-recorded voice message without prior express written consent.

### COUNT III
### Failure to Implement Internal Do-Not-Call Policies
### 47 U.S.C. § 227(c ) and 47 C.F.R. §64.1200(d)

**121.** Plaintiff incorporates the forgoing paragraphs 1-110 as though the same were set forth at length herein.

**122.** The FCC regulations prescribed under Section 227(c) require companies like Defendant, who engage in telemarketing to institute "procedures for maintaining a list of persons who request not to receive telemarketing calls/texts on or behalf of that person or entity." *See* 47 C.F.R. § 64.1200(d).

**123.** These procedures must meet several minimum standards, including, but not limited to:

    **(6) Maintenance of do-not-call lists.** A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls/text. A do-not-call request must be honored for five (5) years from the time the request is made.

**124.** All named Defendants failed to maintain and/or implement these minimum standards by repeatedly calling Plaintiff after he requested that defendant(s), their agents, DOE telemarketers and representatives stop calling.

**125.** In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers that should have been placed on Defendant's internal do not call list. See 47 U.S.C. §§ 227(c)(5)(A).

**126.** By making constant solicitation calls to the phones of Plaintiff his number should have been placed on Defendant's agent internal do not call list, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c) and the TCPA's corresponding regulations.

**127.** Rawlings, DOE telemarketers and DOE insurance company should have known that Plaintiff did not wish to receive a constant stream of final expense and medicare solicitation calls daily, Accordingly, the violations were willful.

**128.** As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and treble damages.

## Count IV
## (Violations of the Texas Business & Commerce Code § 302.101)

**129.** Plaintiff incorporates the forgoing paragraphs 1-110 as though the same were set forth at length herein.

**130.** The foregoing acts and omissions of Defendants and/or their agents and or affiliates and/or other persons or entities acting on Defendants behalf, constitute multiple violations of the Texas Business & Commerce Code § 302.101 by making telephone solicitation calls telemarketing calls to plaintiff's cell number despite not holding a registration certificate and bond on file with the Texas Secretary State of Texas.

**131.** As a result of Defendants and/or its affiliates, agents and/or other persons or entities acting on Defendants' behalf, violations of the Tex. Bus. & Comm. Code § 302.101 is presumptively entitled to a civil penalty of $5,000.00 for each violation under § 302.302 plus all reasonable costs of prosecuting this action.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, Timothy Aguilar, respectfully prays for judgment against each named

defendant's jointly and severally as follows:

a. In the interests of justice, leave to amend this Complaint to name additional and further discovered DOE's as these individual(s) and or entities are discovered in this litigation;

b. An injunction enjoining Defendant named herein and or their agents and affiliates from engaging in the unlawful TCPA conduct set forth herein;

c. An award of statutory damages of $500.00 per violative telephone call and or text arising from the TCPA § 227(b)(1)(B) intentional violations jointly and severally against defendants;

d. An award of $1500.00 per violative telephone call or text arising from the TCPA §227(b)(1)(c) intentional violations jointly and severally against named defendants;

e. A declaration that the actions complained of herein have been caused by Defendants named herein and or their agents and or affiliates violating the TCPA and Texas state law;

f. Additional treble damages of $1,500.00 per violative telephone call or text as provided under 47 U.S.C. § 227(c )(5)(C);

g. An award of $1,500.00 in statutory damages arising from violations of the Texas Business & Commerce Code § 305.053;

h. Statutory damages of $5,000 per violation (as provided under §302.101 of the Texas Business & Commerce Code);

i. All reasonable  witness fees, witness fees, discovery investigation fees, court costs and other litigation costs incurred by Plaintiff pursuant to §302.302(a) of the Texas Business & Commerce Code;

j. Any other relief this Honorable Court deems appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff, Timothy Aguilar, demands a jury trial in this case

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant Rawlings, US Funeral Expenses, DOE Telemarketing Companies and their agents and affiliates take affirmative steps to preserve all call data records (CDR), lists, electronic databases or other itemizations and or documents associated with the allegations herein, including all records, lists, electronic databases including  Workforce Management software, CCaaS, IVR, Oracle, Speech Analytic, Five9, Genesys, Salesforce,

Talkdesk or other itemizations in the possession of any vendors, individuals, and/or companies contracted, hired, or directed by Defendant to assist in sending the alleged robocalls and text messages and or communications to Plaintiff named herein to his residential phone number as listed herein.

Respectfully submitted,

Timothy Aguilar, Pro Se
2807 Randolph Road
Pasadena, Texas 77503
proselitigationtx@gmail.com
832-689-7311

State of Texas          §
                        §
County of Harris        §

BEFORE ME, on September  16 , 2024, appeared Timothy Aguilar, identified to me by Texas Identification, and states that the statements made within this Original Complaint are true and correct, competent to testify to the matters and or statements within and the exhibits attached to the complaint are true and correct and based on personal knowledge and obtained from his I-phone cell phone 832-XXX-7311 and are copies of originals.

NOTARY PUBLIC in and for
THE STATE OF TEXAS

National Do Not Call Registry - Your Registration Is Confirmed

From: verify@donotcall.gov

To:    locateutoday@aol.com

Date: Saturday, May 11, 2024 at 04:16 PM CDT


Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 7311 on September 29, 2011. Most telemarketers will be required to stop calling you 31 days from your registration date.

Visit https://www.donotcall.gov to register another number or file a complaint against someone violating the Registry.

*************************************************************************************************************

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to inquiries.

PLAINTIFF'S EXHIBIT

Number ___1___

about:blank

 *Texas "No Call Lists"*

# Search Consumer Registration

## Registration Information

Telephone Number: 832-689-7311
Amount: $0.00
Method of Payment: Credit Card

List: Statewide "Do Not Call" List
Status: Registered 8/16/2023 - Expires 8/16/2026

## Search Another Registration

## Consumer Information

---

Public Utility Commission of Texas          Texas "No Call Lists" Home          Texas Electric Choice

**PLAINTIFF S EXHIBIT**
Number __2__



PLAINTIFF S EXHIBIT

Number __3__



PLAINTIFF S EXHIBIT

Number 4



PLAINTIFF S EXHIBIT
Number 5



PLAINTIFF S EXHIBIT

Number ____



CHANNELVIEW, TX

+1 (346) 394-8179

mes...    call    video    mail    pay

Add a Caption

Monday • Apr 29, 2024 •
12:58 PM

IMG_4538

Screenshot    PNG

No lens information

PLAINTIFF S EXHIBIT
Number    7



Final Expense    Medicare Insurance

```
┌─────────────────────────────────────────┐
│   TALK TO A LICENSED SALES AGENT          │
│        (989) 500-0043                     │
└─────────────────────────────────────────┘
```

# START NOW TO GET QUICK AND EASY QUOTES

## Tell us about yourself

| First Name* |
|---|

| Last Name* |
|---|

| Phone Number* |
|---|

| Street Address* |
|---|

| Zip Code |
|---|

| City* |
|---|

| AL |
|---|

| mm/dd/yyyy |
|---|

| Coverage Amount... |
|---|



PLAINTIFF S EXHIBIT

Number ___8___

☐ **By clicking Submit, you agree to our Privacy Policy and Terms and Conditions.**
By clicking "submit", below I agree by electronic signature to be contacted by US Funeral Expenses, directly or by third-parties acting on its behalf, to send marketing/promotional messages— including texts and calls made using an automatic telephone dialing system or pre-recorded or artificial voice messages— related to the product or service I am inquiring about to the number I provide above. Accepting this consent is not required to obtain any good or service. Consent can be revoked through any reasonable means. Telephone company may impose additional charges on subscriber for messages.

Submit

## Want to speak to someone now?
# (989) 500-0043

## HAVE QUESTIONS ABOUT
# Final Expense?
### *Let us help you.*

Having quality life insurance is one of the most valuable things that you can do for your family and loved ones. Final expense insurance is a type of coverage that provides the money for a funeral and other burial related expenses that are considered to be one's

**"Final Expenses".**

This coverage was designed for people ages 50 – 85 to purchase a life insurance policy offering lifetime coverage at a more reasonable price.


PLAINTIFF'S EXHIBIT
Number 8.1

# OUR PRODUCTS

## Health Insurance

Having the right health insurance is one of life's most important assets but can also be a confusing process. Our partners can walk you through every option including decisions like HMO vs. PPO? when am I allowed to sign up? and what's the best price for my needs?

## Auto Insurance

Driving a car is something most of us do almost our entire life. It represents freedom and fun adventures, and OK also gets us to work, school and the market. But what about when the unexpected happens, do you have the right Auto Insurance policy for your situation?

## Life Insurance

Plan and protect the future for your loved ones through a Life Insurance policy. We never know what tomorrow brings. Ensure that your loved ones are taken care with mortgages, schooling, debt. Find a policy that works for your finances today and sets your family up for the future.

## Medicare Insurance

PLAINTIFF S EXHIBIT
Number 8.2

Case 4:24-cv-03474    Document 1    Filed on 09/17/24 in TXSD    Page 42 of 42

If you're approaching 65 years old, you're likely starting to look into Medicare Options. There are different Medicare plan options you may want to consider, including Medicare Supplement Insurance if you choose to enroll in Original Medicare (Part A and Part B). Let the experts match you to the right coverage and walk you through the steps to get you covered.

# *PROTECTING YOU, YOUR FAMILY AND YOUR ASSETS.*

## Some of the partners we work with:

Prosperity life insurance group

Aetna

Foresters financial

GTL Guarantee trust life

Americo

AIG

American amicable life insurance

PLAINTIFF S EXHIBIT
Number 8.3